IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

THOMAS A. ROSE,

    Plaintiff,

v.                                                                                                      Case No. 7:20cv609

OFFICER ADAMS, *et al.*,

    Defendants.

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants Officer J. Adams, Officer E. Paisley, and K-9 Sgt. J. Robinson, by counsel, submit the following in support of their Motion for Summary Judgment and in opposition to Plaintiff's Motion for Summary Judgment, ECF No. 22.

**PRELIMINARY STATEMENT**

Plaintiff Thomas A. Rose, #1434775, is an inmate in the custody of the Virginia Department of Corrections ("VDOC") who at all relevant times was housed at River North Correctional Center ("RNCC"). He brings this action *pro se* under 42 U.S.C. § 1983, asserting claims with respect to an incident that occurred at RNCC on August 7, 2020. Compl., ECF No. 1. Specifically, Defendants interpret the Complaint as asserting the following claims:

1.    Defendants used excessive force against Rose, in violation of the Eighth Amendment. Compl. ¶¶ 33–39.

2.    Defendants subjected Rose to differential treatment on the basis of his race, in violation of the Equal Protection Clause of the Fourteenth Amendment. Compl. ¶¶ 40–45.

Rose seeks damages against the Defendants in their individual and official capacities. Compl. ¶¶ 5–7, 46–49.

Defendants submit that there are no genuine disputes of material fact as to any of the claims asserted against them. Specifically, as to Rose's claim of excessive force, the record shows that the Defendants' use of force was no greater than necessary to make Rose stop fighting with another inmate. With respect to Rose's equal protection claim, the record shows that Defendants did not discriminate against Rose on the basis of his race, but instead used force against him because he would not stop fighting. Accordingly, no reasonable jury would find that Defendants violated Rose's Eighth or Fourteenth Amendment rights. Further, Defendants are immune from claims for damages against them in their official capacities, and those claims must therefore be dismissed. For these reasons, Defendants respectfully request that summary judgment be entered in their favor and all claims asserted against them be dismissed. Moreover, for these same reasons, Defendants submit that there are no grounds for granting summary judgment in favor of Rose, and accordingly request that his Motion for Summary Judgment, ECF No. 22, be denied.

## AFFIDAVITS

In support of their Motion for Summary Judgment, and in opposition to Rose's Motion for Summary Judgment, Defendants enclose and incorporate by reference the affidavits of the following individuals: (1) Defendant J. Adams ("Adams Aff.," Ex. 1); (2) Defendant E. Paisley ("Paisley Aff.," Ex. 2); (3) Defendant J. Robinson ("Robinson Aff.," Ex. 3); (4) Heather M. Walls, LPN, Nurse at RNCC ("Walls Aff.," Ex. 4); and (5) K. King, Lieutenant and Institutional Investigator at RNCC ("King Aff.," Ex. 5). Defendants respectfully request the Court to consider

these affidavits and their enclosures as evidence in support of their Motion and their response in opposition to Rose's Motion. *See* Fed. R. Civ. P. 56(c).

## STATEMENT OF FACTS

1. Plaintiff Thomas A. Rose, #1434775, is an inmate in the custody of VDOC, who at all relevant times was housed at RNCC. Compl. ¶ 4.

2. Defendant J. Adams was at all relevant times a Correctional Officer at RNCC. Answer ¶ 2, ECF No. 18.

3. Defendant E. Paisley was at all relevant times a Correctional Officer at RNCC. Answer ¶ 3.

4. Defendant J. Robinson was at all relevant times a K-9 Sergeant at RNCC. Answer ¶ 4.

5. On August 7, 2020, inmate L. Dodson threw a trash can at Rose while they were congregated in the dayroom of the C-2 housing unit. After Rose was hit with the trash can, he and Dodson began fighting. Adams Aff. ¶ 4, Encl. A; King Aff. Encl. A at 1:30:10–1:30:24, Encl. C.

6. When Rose and Dodson began fighting, Adams, who was serving as the Gun Post Officer, activated the audible alarm and issued a verbal warning for the inmates to stop fighting. When they refused the warning, Adams fired one Oleoresin Capsicum ("OC") round toward the inmates, which impacted on Rose because he was on top of Dodson. Adams did aim the OC capsule with the intent to hit Rose rather than Dodson. He fired the single launcher in accordance with his training and in an attempt to stop the altercation since neither inmate would stop fighting. Adams Aff. ¶ 4, Encl. A; King Aff. Encl. A at 1:30:24, Encl. C.

3

7. Paisley responded to a call for assistance, and when he entered the dayroom area saw Rose and Dodson continuing to fight. Because the inmates did not respond to commands to cease fighting, Paisley initiated four one-half second bursts of OC spray. The first two bursts missed the target area. The third burst hit Dodson and the fourth burst hit Rose. Paisley Aff. ¶ 4; King Aff. Encl. A at 1:30:24–1:30:39.

8. Robinson, who was patrolling the boulevard outside the C-2 housing unit, received a call for canine assistance. As soon as he entered the housing unit, he gave verbal commands to stop fighting or he would use the canine, in accordance with standard procedure. Robinson observed Rose on top of Dodson, striking him. Robinson gave another verbal warning, but Rose continued to strike Dodson, so Robinson gave his canine the command to engage. The canine engaged Rose on the lower right leg, and Robinson instructed Rose to lay on his stomach and put his arms out to the side, palms up. Rose complied with the command and Robinson gave his canine the command to disengage, which he did immediately. Other staff then escorted Rose to medical while Robinson remained in the pod to support staff until the pod was locked down. Robinson Aff. ¶ 4, Encl. A; King Aff. Encl. A at 1:30:39–1:32:32, Encl. C.

9. All three Defendants testify that they did not act in a discriminatory manner. Rose was not targeted for use of force because of his race or because the Defendants believed he was responsible for starting the fight. Adams's shot struck Rose because he was on top of Dodson. Paisley utilized OC spray on both Rose and Dodson. And Robinson engaged his canine on Rose because Rose was on top of Dodson and would not stop striking him. All actions were done in accordance with the Defendants' training and were necessitated by the inmates' own actions. Adams Aff. ¶ 5; Paisley Aff. ¶ 5; Robinson Aff. ¶ 5.

10. Following the altercation, Rose was brought to the institutional medical department for treatment. Rose's wounds were dressed and cleansed, and he was referred to the institutional physician. Rose received open air decontamination from the OC spray from the time he left the area of the incident. Further decontamination was offered after Rose was treated and returned to his housing unit, but he refused. Walls Aff. ¶ 4, Encl. A.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" are not material, and summary judgment may be entered even if such immaterial facts are in dispute. *Id.* A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this showing has been made, the burden shifts to the nonmoving party to establish the specific material facts that are in dispute. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In considering a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The court does not weigh evidence or determine credibility, but instead only determines whether the record demonstrates a genuine dispute of material fact. *Id.*; *Anderson*, 477 U.S. at 255.

### ARGUMENT AND AUTHORITIES

**I.    Defendants did not use excessive force in violation of the Eighth Amendment.**

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" against prisoners through the use of excessive force. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In order to state a claim under the Eighth Amendment for excessive force, a plaintiff must satisfy both an objective and subjective component. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Objectively, the use of force must be "sufficiently serious to establish a cause of action." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 9). Thus, a claim for excessive force will not lie for "*de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

As to the subjective component, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21 (internal quotation marks omitted). Several factors are considered in making this determination, including, "(1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response." *Williams*, 77 F.3d at 762 (internal quotation marks omitted) (citing *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321). The absence of serious injury is another factor that, although not dispositive, is relevant to this inquiry. *Id.* Ultimately, the court must determine "whether the use of force could plausibly have been thought necessary, or instead

evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

Even assuming *arguendo* that the Defendants used force that was objectively sufficiently serious, the record shows that their use of force was necessary and proportional under the circumstances. Accordingly, there can be no genuine dispute that Defendants did not use force wantonly or maliciously.

### A. *Need for the Application of Force*

It is well established the prison officials have a duty to protect inmates from harm, including protection from violence inflicted by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). In this instance, as Defendants have testified and as the video evidence makes clear, use of force was necessary to break up the ongoing fight between Rose and Dodson. Video evidence shows that after Dodson threw the trash can at Rose, Rose immediately tackled Dodson to the ground and began striking him. King Aff. Encl. A at 1:30:10–1:30:24. The two inmates then remained engaged in the altercation, with Rose on top of Dodson, until the time Rose finally complied with Robinson's direction to lie down with his arms out and the inmates were separated. *Id.* at 1:30:24–1:31:15.

Although Rose testifies that his involvement in the altercation was entirely defensive, and that he never struck Dodson, Rose Aff. ¶¶ 3, 5, ECF No. 22-1, this is inconsistent with the video evidence. In light of this evidence, Rose's contradictory statements are insufficient to create a genuine dispute of fact. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008)

(noting that where "the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape"). Moreover, even if Rose's allegation that he did not strike Dodson could be credited, he has not disputed that he failed to disengage from the encounter despite multiple instructions from the Defendants.

  B.  *Relationship Between the Need and the Amount of Force Used*

  The undisputed record shows that Defendants applied force in a continuum, with greater levels of force used only when verbal directions and lesser means of force proved insufficient to get Rose and Dodson to stop fighting. Adams first activated the alarm and issued instructions for Rose and Dodson to stop fighting. Adams Aff. ¶ 4. He then fired one non-lethal OC round. *Id.* Once these actions were attempted and the inmates continued to fight, Paisley struck each inmate with one burst of OC spray. Paisley Aff. ¶ 4. When this too failed to quell the altercation, Robinson issued further instructions to stop fighting—which again were disregarded—and engaged his canine on Rose's leg. Robinson Aff. ¶ 4. Only at this point did were Rose and Dodson able to be separated and the inmates became compliant with instructions. *Id.*

  C.  *The Threat Reasonably Perceived by Officials*

  As noted above, the use of force was necessary in these circumstances to prevent Rose and Dodson from inflicting further harm on one another and to restore discipline. Despite Rose's contentions to the contrary, it was not required that Defendants direct all of their efforts to break up the fight towards Dodson simply because he was the initial aggressor. Rather, the record demonstrates that Rose and Dodson were mutually engaged in the altercation. King Aff. Encl. A at 1:30:10–1:30:55; *see also id.* Encl. C (noting that Dodson was treated for injuries, including a human bite on his left bicep). Particularly in light of the fact that the two inmates disregarded

8

initial verbal warnings and lesser means of force, it was reasonable for officials to perceive that the fight would continue, with the possibility of Rose and Dodson incurring further injury at the hands of the other, unless further action was taken.

### D. *Efforts to Temper the Severity of a Forceful Response*

Defendants did not use greater force than necessary to stop the fight between Rose and Dodson. Adams and Robinson gave verbal commands to stop fighting, which were disregarded. Adams Aff. ¶ 4; Robinson Aff. ¶ 4. The inmates also continued to fight after Adams and Paisley attempted to break up the fight through the use of a non-lethal OC round and OC spray. Adams Aff. ¶ 4; Paisley Aff. ¶ 4. Only when Robinson engaged his canine on Rose did the two inmates follow instructions and stop fighting. Robinson Aff. ¶ 4. Robinson instructed his canine to release from Rose and soon as he complied with instructions to lie down with his arms out. Robinson Aff. ¶ 4; King Aff. Encl. A at 1:30:45–1:31:15. After the altercation had ended, Rose was given prompt medical treatment and open air decontamination, and he declined further opportunity for decontamination after he was brought back to his housing unit. Walls Aff. ¶ 4.

### E. *Summary of Subjective Factors*

The record makes clear that Adams, Paisley, and Robinson only used force in a good-faith effort to break up the fight between Rose and Dodson. Because the two inmates continued to fight despite instructions from officials to disengage, it was necessary to use force to break up the fight. The Defendants then deployed force along a continuum, only using a greater means of force when prior, lesser uses of force had been attempted without success in ending the fight. Once Robinson's use of his canine succeeded in separating the inmates and achieving compliance with instructions, no further force was used, and Rose received prompt medical treatment. Accordingly, the record demonstrates that Defendants did not act with subjective

malicious intent, and summary judgment should therefore be granted in favor of the Defendants with respect to Rose's Eighth Amendment claim.

## II. Defendants did not violate Rose's right to equal protection under the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment provides that "all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal quotation marks omitted). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison*, 239 F.3d at 654. "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* In the prison context, the appropriate level of scrutiny to apply in equal protection claims is one of "reasonableness" in accordance with the *Turner* factors. *Morrison*, 239 F.3d at 654–55; *accord Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002).

In this case, Rose (who is African-American) alleges that he was treated differently from Dodson (who is white) on the basis of his race. There is no evidence in the record, however, showing that he received differential treatment as the result of purposeful discrimination. As a threshold matter, Rose's claim must fail with respect to Defendant Paisley because Paisley utilized OC spray on both Rose and Dodson, thus foreclosing any claim of differential treatment. More significantly, Rose's claim fails as to all three Defendants because he has put forward no "specific, non-conclusory factual allegations that establish improper motive." *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003) (internal quotation marks omitted).

In his Motion, Rose baldly alleges that the Defendants used force against him only because of his race and his activism with Black Lives Matter. Pl.'s Mot. for Summ. J. ¶¶ 4–6.

10

Rose is not competent to testify directly to the Defendants' subjective states of mind, and the evidence he offers in support of his contention is scant. In Rose's affidavit, he states that prisoners' involvement in the Black Lives Matter movement caused "tension" with the staff at RNCC, and that an unidentified staffer apparently taunted him by shouting "Black Lives Matter" while he was outside of the pod being taken to medical. Rose Aff. ¶¶ 11, 14–15. Even if these vague allegations were accepted as showing ill intent on the part of some officers, however, they say nothing about the intent of any of the Defendants specifically.

To the contrary, the Defendants have all testified that Rose's race played no role in their decision to use force. Adams Aff. ¶ 5; Paisley Aff. ¶ 5; Robinson Aff. ¶ 5. They have further testified that they did not act on the basis of any belief that Rose was responsible for instigating the fight with Dodson. *Id.* The record demonstrates that, to the extent force was inflicted on Rose rather than Dodson, this was necessitated by circumstances. Rose was struck by the non-lethal OC round because he was positioned on top of Dodson at the time the round was fired. Adams Aff. ¶ 4; King Aff. Encl. A at 1:30:24. Paisley's testimony that he used OC spray against both Rose and Dodson is supported by the fact that both inmates were fighting in close proximity at the time the spray was deployed. Paisley Aff. ¶ 4; King Aff. Encl. A at 1:30:24–1:30:39. And Robinson engaged his canine against Rose instead of Dodson because Rose was on top of Dodson and striking him at the time Robinson entered the pod. Robinson Aff. ¶ 4; King Aff. Encl. A at 1:30:39–1:30:45. Thus, all three Defendants' decisions to use force were based on the circumstances of the fight itself, and were unrelated to Rose's race. Because there is nothing in the record to show that Defendants acted as a result of purposeful or intentional discrimination, Defendants request that summary judgment be entered in their favor as to Rose's Fourteenth Amendment claim.

**III.     Defendants may not be sued for damages in their official capacities.**

Defendants are immune from claims for monetary damages brought against them in their official capacities. State employees acting in their official capacities are not "persons" for purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In addition, the Eleventh Amendment, which immunizes the states against suits for money damages brought in federal court, *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013), applies with equal force to suits brought against state employees in their official capacities. *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996); *see also Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (citation omitted)). All claims for monetary damages asserted against Defendants in their official capacities must therefore be dismissed.

**IV.     Rose's Motion for Summary Judgment should be denied.**

For the reasons stated above, Defendants contend that summary judgment should be granted in their favor because there is no genuine dispute of fact on which a reasonable jury could find them liable. Because summary judgment is warranted in favor of the Defendants, it follows that Rose is not entitled to summary judgment on any of his claims. Even if the Court should find that Defendants have not met their burden for summary judgment, their submissions are at the very least sufficient to preclude a grant of summary judgment in favor of Rose. Defendants have testified and presented evidence showing that their use of force against Rose was necessary in order to break up the fight between him and Dodson, and that they did not act with any discriminatory intent towards him. In light of this evidence, Rose cannot show that no

reasonable jury would find in favor of the Defendants. Rather, Defendants submit that judgment in their favor is the only reasonable outcome that can follow from this record.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that their Motion for Summary Judgment be granted, Rose's Motion for Summary Judgment be denied, and judgment be entered in their favor.

        Respectfully submitted,

        OFFICER ADAMS, OFFICER E. PAISLEY, AND K-9 SGT. J. ROBINSON

By:     /s/ Timothy E. Davis
Timothy E. Davis, AAG, VSB#87448
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 225-4226
(804) 786-4239 (Fax)
Email: tdavis@oag.state.va.us

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of April, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following: N/A; and

I hereby certify that I have mailed the document, postage prepaid, to the following non-filing user:

> Thomas A. Rose #1434775
> River North Correctional Center
> 329 Dell Brook Lane
> Independence, VA 24348

                                               /s/ Timothy E. Davis
Timothy E. Davis, AAG, VSB#87448
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 225-4226
(804) 786-4239 (Fax)
Email: tdavis@oag.state.va.us