IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

THOMAS A. ROSE,                          )
                                         )        Civil Action No. 7:20cv00609
        Plaintiff,               )
                                         )
v.                                       )        **MEMORANDUM OPINION**
                                         )
OFFICER ADAMS, *et al.,*                 )        By:   Hon. Thomas T. Cullen
                                         )              United States District Judge
        Defendants.              )

_____

      Thomas A. Rose, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C.

§ 1983, against Officers Adams, Officer Paisley, and Sgt. Robinson, alleging that they used

excessive force against him and denied him equal protection while he was housed at River

North Correctional Center ("River North"). Both Rose and the defendants filed motions for

summary judgment. After reviewing the evidence, the court will deny Rose's motion, deny the

defendants' motion as to the excessive-force claims, and grant the defendants' motion as to

the equal protection and official-capacity damages claims.

## I.

      Rose alleges that on August 7, 2020, he was "randomly attacked" by another inmate

who is a "known affiliate of a white supremacist group with mental health issues." (ECF No.

1, at 9.) Rose states that the other inmate picked up a 60-gallon trashcan, charged at Rose, and

threw the trashcan at him. Rose claims that he and the other inmate "locked up," and that in

self-defense, Rose took the inmate down to the floor to restrain him. (*Id.* at 10.) Rose alleges

that the other inmate punched him "continuously" while Rose "attempted to restrain him."

(*Id.*) Rose suffered a bloody nose and a swollen right eye. Rose states that he never struck the

other inmate during the entire incident. Rose claims that during the incident, Officer Adams "began shooting non[-]lethal rubber bullet rounds at [Rose,] hitting him twice in the back and causing swelling and contusions." (*Id.*) Rose states that he "then slid himself and [the other inmate] underneath the microwave to avoid continuing being shot." (*Id.*) Rose alleges that Officer Paisley then entered the pod "with the strike force and immediately pepper sprayed [Rose,] which caused choking, gagging, and regurgitation of blood and saliva." (*Id.*) Next, he claims that K-9 Sgt. Robinson "entered the pod with a K-9 dog in attack mode and ordered the K-9 to bite [Rose]." (*Id.*) Rose claims that after he was separated from the other inmate, Sgt. Robinson allowed the dog to "continue mauling [Rose] for several minutes." (*Id.*) He states that while other officers were restraining and escorting the other inmate out of the pod "unscathed,"[1] Sgt. Robinson continued to allow the dog to "maul[ Rose's leg,] causing dozens of lacerated wounds and leaving it permanently disfigured." (*Id.* at 10-11.) Rose states that while he was in "excruciating pain," he looked at Sgt. Robinson and "calmly pleaded" for Robinson to remove the dog from Rose's leg." (*Id.* at 11.) Rose claims that Sgt. Robinson yelled for Rose to "turn over" as the dog continued to "maul" him. (*Id.*) Rose alleges that as he began turning over, Sgt. Robinson "finally removed the dog" from Rose's leg.  (*Id.*) Rose states that after the incident, he was helped up and escorted to the vestibule to be placed in handcuffs.

Once in the vestibule, Rose claims that an officer attempted to place leg restraints on him, "but decided against it after assessing the degree of blood and injuries on [Rose's] leg."

---

[1] The court notes that in an incident report submitted by Rose, it is noted that Rose bit the other inmate during the incident and that the inmate suffered an open wound. (*See* ECF No. 28-2, at 18.)

(*Id.*) As Rose was being escorted to the medical unit, he claims that an unknown officer behind him yelled out, "Black Lives Matter!" causing the officers escorting Rose "to laugh." (*Id.*) Rose subsequently received medical attention for the injuries he sustained. He claims that while he was in the medical unit, a lieutenant made a video recording of his injuries to his "back, eyes, nose, and leg," and several staff came to the medical unit to "observe" his injuries. (*Id.* at 11-12.) After receiving medical treatment, Rose says that he went to the unit manager's office where he was informed that, "after reviewing the camera, it was determined that [the other inmate] was the assailant and that [Rose] was never the aggressor." (*Id.* at 12.) Rose claims that two officers "apologized," explained that the other inmate had been placed in restrictive housing, and advised Rose that he would be returning to his general population cell.

Rose contends that Officer Adams, Officer Paisley, and Sgt. Robinson used excessive force against Rose when they fired non-lethal rubber bullets, utilized pepper spray, and engaged the K-9 against Rose, respectively, after they "wrongfully determine[ed] that [Rose] was the assailant because he is black" and a member of the Black Lives Matter Virginia Prison Chapter, and that the other inmate "was the victim of an assault because he is white." (*Id.* at 14–17.) As relief, Rose seeks unspecified compensatory, punitive, and nominal damages.

Rose filed a motion for summary judgment arguing that there are no genuine disputes of material facts about whether the defendants used excessive force against him or whether they did so "because he's African American and a "B[lack] L[ives] M[atter] member."[2] (ECF No. 22, at 18.)

---

[2] Notably, Rose also filed an "Affidavit of Disputed Material Facts" in opposition to the defendants' motion for summary judgment. (*See* ECF No. 28.)

The defendants also filed a motion for summary judgment arguing that there are no genuine disputes of material facts as to any of the claims asserted against them. Specifically, as to Rose's excessive-force claim, they argue that the record shows that the defendants' use of force was no greater than necessary to make Rose stop fighting with the other inmate. With respect to Rose's equal protection claim, they argue that the record shows that the defendants did not discriminate against Rose on the basis of his race, but instead used force against him because he would not stop fighting. Finally, the defendants argue that they are immune from claims for damages against them in their official capacities. In support of their motion for summary judgment, and in opposition to Rose's motion for summary judgment, defendants submit the affidavits of Officer Adams, Officer Paisley, Sgt. Robinson, Nurse Walls, and Lt. King.

The defendants do not dispute that the attack occurred, but they provide additional and/or different facts about how the incident unfolded. The defendants state that, after the other inmate attacked Rose, the two inmates began fighting. Officer Adams, who was serving as the Gun Post Officer, activated the audible alarm and issued a verbal warning for the inmates to stop fighting. Officer Adams states that when Rose and the other inmate refused the warning, he fired one Oleoresin Capsicum ("OC") round toward the inmates, which hit Rose because he was on top of the other inmate. Officer Adams avers that he "did not aim the OC capsule with the intent to hit Rose rather than the other inmate." (Aff. of J. Adams ¶ 4, Apr. 26, 2021 [ECF No. 24-1].) He claims that he fired the single launcher in accordance with his training and in an attempt to stop the altercation since neither inmate would stop fighting.

Officer Paisley states that he responded to a call for assistance and, when he entered the dayroom area, he saw Rose and the other inmate fighting. Officer Paisley claims that because the inmates did not respond to commands to cease fighting, he initiated four one-half second bursts of OC spray. The first two bursts missed the target area. The third burst hit the other inmate and the fourth burst hit Rose. Officer Paisely states that he "backed away as the K-9 officer approached the area." (Aff. of E. Paisely ¶ 4, Apr. 24, 2021 [ECF No. 24-3].)

Sgt. Robinson, who was patrolling the "boulevard" outside the housing unit, received a call for canine assistance. He claims that as soon as he entered the housing unit, he gave verbal commands to stop fighting or he would use the canine, in accordance with standard procedure. Sgt. Robinson states that he observed Rose on top of the other inmate, striking him. Sgt. Robinson avers that he gave another verbal warning, but Rose continued to strike the other inmate, so Sgt. Robinson gave his canine the command to engage. The canine engaged Rose on the lower right leg, and Sgt. Robinson instructed Rose to lie on his stomach and put his arms out to the side, palms up. When Rose complied with the command, Sgt. Robinson gave the canine the command to disengage, "which he did immediately." (Aff. of J. Robinson ¶ 4, Apr. 22, 2022 [ECF No. 24-4].) Other staff then escorted Rose to medical while Sgt. Robinson remained in the pod to support staff until the pod was locked down.

All three of the defendants aver that they did not act in a discriminatory manner. They state that Rose was not targeted for use of force because of his race or because the defendants believed he was responsible for starting the fight. Officer Adams states that his shot struck Rose because he was on top of the other inmate. Officer Paisley states that he utilized OC spray on both Rose and the other inmate. And Sgt. Robinson states that he engaged his canine

on Rose because Rose was on top of the other inmate and would not stop striking him when ordered to do so. The defendants argue that all of their actions were done in accordance with their training and were necessitated by Rose's own actions.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to

determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

## III.

Rose alleges that each of the defendants used excessive force against him during the August 7 incident. Finding genuine disputes of material facts, the court will deny the parties' motions for summary judgment.

The Eighth Amendment protects inmates from cruel and unusual punishment. *See Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To succeed on an excessive force claim, a prisoner must establish that "the officials acted with a sufficiently culpable state of mind," and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quotation and alteration omitted); *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quotations omitted); *see United States v. Gore*, 592 F.3d 489, 494 (4th Cir. 2010); *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). In determining whether the force used was excessive, the court must look at the need for the application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to

the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Rose claims that he was attacked, did not fight with the other inmate, and did not strike the other inmate. The defendants claim that although Rose did not initiate the altercation, he fought with the other inmate, would not separate from the other inmate, and continuously struck the other inmate against the defendants' orders to cease. Rose argues that the defendants unnecessarily used force, while the defendants maintain that they only used the force necessary to restore order.  Having reviewed the record as a whole and drawing all reasonable inferences in the light most favorable to the appropriate parties,[3] the court concludes that there are genuine issues of material fact precluding summary judgment on Rose's excessive-force claims.[4] Accordingly, the court will deny the parties' motions for summary judgment as to these claims.

## IV.

Rose also claims that each of the defendants violated his right to equal protection. The court concludes that Rose's allegations fail to state cognizable equal protection claims and will therefore grant defendants' motion for summary judgment and deny Rose's motion for summary judgment as to these claims.

---

[3] In considering Rose's motion for summary judgment, the court has drawn all reasonable inferences in the light most favorable to the defendants; in considering the defendants' motion for summary judgment, the court has drawn all reasonable inferences in the light most favorable to Rose.

[4] The court notes that the defendants also submitted video footage of the incident from multiple cameras in the pod. (*See* ECF No. 27.) The court has reviewed that video footage and finds that it is not dispositive of the issues before the court. For example, the court can see that an inmate throws a trashcan at another inmate, but after that, the court cannot discern where Rose is throughout the video, whether warnings are given before the force is used, or whether Rose continued to fight with and/or strike the other inmate.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the Equal Protection Clause, "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). A plaintiff also must set forth "specific, non-conclusory factual allegations that establish improper motive." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* In the prison context, the appropriate level of scrutiny to apply in equal protection claims is one of "reasonableness" in accordance with the factors identified in *Turner v. Safley*, 482 U.S. 78 (1987). *See Morrison*, 239 F.3d at 654–55. *Accord Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002).

Rose alleges that he was treated differently from the other inmate because he is black. The evidence does not establish, however, that Rose received differential treatment as the result of purposeful discrimination. Rose has not put forward any "specific, non-conclusory factual allegations" that would establish an improper motive by any or all the defendants. *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003) (internal quotation marks omitted).

Rose alleges that he is African American and a member of Black Lives Matter. He asserts that each of the defendants used force against him based on his race and his activism

with Black Lives Matter. Rose states that, generally, prisoners' involvement with the Black Lives Matter movement has caused tension with River North staff. To support his assertion that each of the defendants violated his right to equal protection, Rose claims that an unidentified staff member yelled "Black Lives Matter" as he was being escorted to the medical unit after the incident. He does not allege that any of the defendants yelled that. He also does not allege that any of the defendants made any comment about race—his or anyone else's—before, during, or after the incident.

Conversely, the defendants aver that Rose's race played "no role" in their decisions to use force. (Adams Aff. ¶ 5; Paisely Aff. ¶ 5; Robinson Aff. ¶ 5.) They also state that they did not use force because they believed that Rose was responsible for instigating the incident. Instead, they assert that their decisions to use force were based on the dangerous circumstances of the incident itself.

The court finds that Rose has not plausibly alleged that any of the defendants were motivated by discriminatory animus. *See Jones v. Bishop*, Civil Action No. CCB-16-2893, 2018 U.S. Dist. LEXIS 51363, at *42 (D. Md. Mar. 28, 2018) ("Bald and conclusory assertions of discriminatory animus are insufficient to state an Equal Protection claim." (citing *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985)) Accordingly, the court concludes that Rose has failed to allege a viable equal protection claim, and the court will grant defendants' motion for summary judgment and deny Rose's motion for summary judgment as to the equal protection claims.

## VI.

Rose brings this action for damages against the defendants in both their individual and official capacities. But the defendants are immune from claims for damages brought against them in their official capacities. State employees acting in their official capacities are not "persons" for purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In addition, the Eleventh Amendment, which immunizes the states against suits for money damages brought in federal court, *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013), applies with equal force to suits brought against state employees in their official capacities. *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996); *see also Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (citation omitted)). Accordingly, the court will grant the defendants' motion for summary judgment as to all claims for monetary damages asserted against defendants in their official capacities.

## VII.

For the reasons stated, the court will deny Rose's motion for summary judgment and grant in part and deny in part the defendants' motion for summary judgment. Accordingly, only Rose's excessive force claims against the defendants in their individual capacities remain.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 17th day of March, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE